UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PIM SHIH,                                        :      23-CV-8035 (JPC) (RWL)
                                                 :
                              Plaintiff,         :      **REPORT AND RECOMMENDATION**
                                                 :      **TO HON. JOHN P. CRONAN:**
               - against -                       :      **MOTION TO DISMISS**
                                                 :
THE BROADWAY LEAGUE,                             :
                                                 :
                              Defendant.         :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Pim Shih ("Shih" or "Plaintiff"), proceeding *pro se*, alleges that Defendant

The Broadway League ("the League" or "Defendant") failed to help Shih promote his

theater production because he is Chinese American and Christian.  Shih brings claims of

racial and religious discrimination, retaliation, breach of implied contract, intentional

infliction of emotional distress, negligent infliction of emotional distress, defamation, and

tortious interference with prospective economic advantage.  Defendant has moved to

dismiss the Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  For the reasons that follow, I recommend that

Defendant's motion be GRANTED.

**Factual Background**

As required on a motion to dismiss pursuant to Rule 12(b)(6), the Court takes the

well-pled facts alleged in the Complaint as true and draws all reasonable inferences in

favor of Shih as the non-moving party.

Shih, who is Chinese American and Christian, is the producer of an Off-Broadway

theater production called PimComedy Fashion Show.  (Complaint ("Compl."), Dkt. 1 ¶¶ 3,

5.)  The League is a 501(c)(6) trade association representing the interests of Broadway and the entertainment industry.  (*Id*. ¶ 4.)  Shih does not claim to be a member of the League.  (*See generally* Compl.)

On February 7, 2022, Shih reached out to the League's Diversity Officer Gennean Scott "seeking assistance and information on programs or efforts to support Chinese or Chinese American artists" and "with the hope of addressing issues of racial discrimination within the industry."  (*Id*. ¶ 6.)  As set forth in the Complaint, Shih sent three emails to the League in February 2022, June 2022, and August 2023, but the League "rejected Plaintiff's request for any relationship or help or assistance with his theater show, or inclusion in their programs to help with Diversity and inclusion."  (*Id*. ¶ 8.)  Shih alleges that the League rejected his show based on his racial and religious background.  (*See id.* ¶ 14.)

Shih also alleges that he sought help with the promotion of his show from non-party TodayTix, a Broadway show ticketing platform that is not owned by, affiliated with, or operated by the League.  (*See id.* ¶ 9.)  Shih states that TodayTix ignored one of Shih's emails and sent him an email excluding his show from TodayTix's "Member Nights" promotional program for the year 2023, "citing member demographics and low-ticket pickup as reasons for exclusion."  (*Id*. ¶ 10.)  According to Shih, the "exclusion of Pimcomedy Fashion Show" from TodayTix's Member Nights program and from the TodayTix ticketing website is evidence that The Broadway League "encourag[ed]" its "partners to not help and assist [Shih's] show."  (*Id*. ¶ 25.)  Shih alleges that The Broadway League's actions have "caused significant harm to [Shih's] career," "unjustly limited

[Shih's] opportunities within the entertainment sector," and caused "emotional suffering and damage to [Shih's] mental well-being."  (*Id.* ¶¶ 20, 33.)

## Procedural Background

Shih filed the Complaint on September 11, 2023.  (Dkt. 1.)  The League moved to dismiss the Complaint on February 19, 2024.  (Dkt. 17.)  Shih filed a motion for summary judgment on March 5, 2024, which the Court denied as premature without prejudice to renew at a later date.  (Dkts. 18-19.)  Shih then filed his opposition to Defendant's motion to dismiss on March 11, 2024.[1]  (Dkt. 20.)  Defendant filed its reply April 4, 2024.  (Dkt. 21.)  The motion is now fully briefed, and the matter has been referred to me for a report and recommendation.  (Dkt. 8.)

## Legal Standard

### A.    Motion to Dismiss For Failure To State A Claim

Federal Rule of Civil Procedure 12(b)(6) permits motions to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] At 43 pages, Shih's opposition brief exceeded the maximum number of pages (25) permitted by the Court's rules.  Accordingly, the Court need not consider pages 26-43. *See Kotler v. Jubert,* 986 F.3d 147, 156 (2d Cir. 2021) ("solicitude for pro se litigants does not require us to excuse failure to comply with understandable procedural rules"); *Azzarmi v. Catania*, No. 20-CV-4712, 2021 WL 5014522, at *2 (S.D.N.Y. Oct. 28, 2021) (dismissing the Action where, despite being "warned that his failure to comply with this Court's Individual Rules ... will be grounds for dismissing this Action pursuant to Fed. R. Civ. P. 41(b)," Plaintiff continued his pattern of non-compliance).  But even considering those additional pages, dismissal is warranted.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'''"  *Id*. (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  This tenet, however, is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678. "Rather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level ... i.e., enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint.  *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, and public records.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  And, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the

allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd.*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500, 502 (S.D.N.Y.  2009), *aff'd*, 671 F.3d 140 (2d Cir. 2011).

Similarly, courts are under no obligation to accept as true allegations that are internally inconsistent, *e.g., Pierce v. Fordham University, Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ("[i]t is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss") (internal quotation marks and citation omitted), or that conflict with a plaintiff's prior allegations, *e.g., Palm Beach Strategic Income, LP v. Salzman, P.C.*, No. 10-CV-261, 2011 WL 1655575, at *5-7 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (declining to accept plaintiff's new allegations that conflicted with those in three previous versions of plaintiff's complaint and granting defendant's motion to dismiss).

## B.    Review Of *Pro Se* Pleadings

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Federal Bureau Of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  "[T]he Second Circuit, as a general matter, is solicitous of *pro se* litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice." *Massie v. Metropolitan Museum of Art*, 651 F. Supp.2d 88, 93 (S.D.N.Y. 2009); *see also Weixel v. Board of Education*, 287 F.3d 138, 141 (2d Cir. 2002) (reversing

dismissal where district court failed to construe pro se plaintiff's complaint liberally); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) ("[o]nce a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel").

The Court has applied those standards in reviewing the complaint. Moreover, the Court has taken into consideration factual assertions in Shih's opposition brief. *See Adkins v. City of New York*, No. 19-CV-3628, 2020 WL 2950979, at *5 (S.D.N.Y. Jan. 3, 2020) (stating that "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum to supplement the allegations in the complaint") (internal quotation marks omitted) (collecting cases), *R. & R. adopted*, 2020 WL 1031130 (S.D.N.Y. March 3, 2020).

That said, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (internal quotation marks and citation omitted). Thus, "even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level,'" *Martinez v. Ravikumar*, 536 F. Supp.2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 555), and must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 473 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 570); *see also Cagle v. Weill Cornell*

*Medicine*, 680 F.Supp.3d 428, 434 (S.D.N.Y. 2023) ("*pro se* plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible").

## Discussion

Shih brings claims of racial and religious discrimination, retaliation, breach of contract, emotional distress, defamation, and tortious interference. Because Shih fails to allege facts sufficient to raise a claim of entitlement to relief, each of his claims should be dismissed.

## A.    Racial and Religious Discrimination Claims (Counts I, IV, VII, AND VIII)

Shih asserts claims of racial and religious discrimination under Title II of the Civil Rights Act of 1964 ("Title II"), the New York State Human Rights Law ("NYSHRL"), and the New Jersey Law Against Discrimination ("NJLAD").[2] (Compl. ¶¶ 12-16.)

### 1.    Title II

Title II prohibits places of public accommodation that affect interstate commerce from discriminating based on an individual's race, color, religion, or national origin. 42 U.S.C. § 2000a(a); *Calvino v. Chance*, No. 20-CV-346, 2020 WL 419814, at *1 (S.D.N.Y. Jan. 27, 2020). To bring a claim under Title II, a plaintiff must "allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation

---

[2] Although not alleged in his Complaint, Plaintiff asserts for the first time in his brief that Defendant violated Section 1981 of the Civil Rights Act. (Pl. Mem. at 8.) It is not clear whether that was a mistake or whether Plaintiff intends to plead a Section 1981 claim. In any event, because the standards for Section 1981 and Title II claims are generally similar, to the extent Shih pleads a Section 1981 claim, that claim should also be dismissed. *See Stone v. New York Public Library,* No. 05-CV-10896, 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008), *aff'd*, 348 F. App'x 665 (2d Cir. 2009) ("[t]he Court of Appeals has indicated that § 2000a claims may be analyzed using the framework established for claims under 42 U.S.C. § 1981") (citing *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104-06 (2d Cir. 2001)).

and (2) facts which demonstrate discriminatory intent." *Akyar v. TD Bank U.S. Holding Co.*, No. 18-CV-379, 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018) (citing *Coward v. Town and Village of Harrison*, 665 F. Supp.2d 281, 307 (S.D.N.Y. 2009)). Shih does not plausibly allege either element of a Title II discrimination claim.[3]

With respect to the first element, Shih does not plausibly allege that the League is a place of public accommodation within the meaning of the statute. Title II provides a list of places of public accommodation, and the "list of places of public accommodation within the statute is considered exhaustive, not illustrative." *Alexander v. JP Morgan Chase Bank, N.A.,* No. 19-CV-10811, 2021 WL 1061833, at *3 (S.D.N.Y. March 18, 2021). The statute defines place of "public accommodation" as an establishment either affecting interstate commerce or supported by state action, and falling into one of the following categories:

> (1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment.

---

[3] Even if Shih could establish the elements of a Title II claim, he would only be entitled to injunctive relief – not the damages he requests. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (only injunctive relief is available as a remedy for violation of Title II of Civil Rights Act of 1964); *Alexander v. Private Protective Services, Inc.*, No. 19-CV-10004, 2022 WL 1567447, at *2 (S.D.N.Y. May 18, 2022) ("[i]t is well established, however, that 'individual plaintiffs cannot recover damages for claims brought under Title II; rather, 'only injunctive relief [is] available as [a] remedy'") (quoting *Powell v. National Board of Medical Examiners,* 364 F.3d 79, 86 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004)).

*Bishop v. Henry Modell & Co.,* No. 08-CV-7541, 2009 WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009), *aff'd sub nom.*, 422 F. App'x 3 (2d Cir. 2011).  Because trade organizations do not fall into any of the above categories, Defendant argues Plaintiff's Title II claim must fail.  The Court agrees.

Courts throughout this Circuit have applied Title II to only establishments that are expressly covered by the statute.  *See, e.g., Renxiong Huang v. Minghui.org*, No. 17-CV-5582, 2018 WL 3579103, at *4 (S.D.N.Y. July 25, 2018) (dismissing Title II claim because "religious conferences, demonstrations, and parades plainly do not fall within any of the defined categories of public accommodations under Title II"); *Akyar*, 2018 WL 4356734, at *6 (dismissing Title II claim because "banks do not constitute public accommodations under [§2000a]"); *James v. American Airlines, Inc.*, 247 F. Supp.3d 297, 305-06 (E.D.N.Y. 2017) (airplanes are not places of public accommodation because "none of the establishments listed in the statute remotely resemble[s] an airline") (internal quotation marks and citation omitted).

Here, the Complaint does not allege that the League meets the requirements of any of the five prescribed categories of place of accommodation.  For instance, no facts are asserted to suggest that the League either provides lodging or sells food.  The League is affiliated with the entertainment industry, but there is no indication that it is or operates a place of exhibition or entertainment.  Nor do any allegations assert that the League is an establishment that either is within or contains a covered establishment.

The Seventh Circuit's decision in *Welsh v. Boy Scouts of America* underscores the point.  993 F.2d 1267 (7th Cir. 1993), cert. denied, 510. U.S. 1012 (1993).  In *Welsh,* the Court held, as a matter of first impression for the federal courts, that Title II's definition of

"public accommodation" does not "encompass membership organizations whose purpose is not closely connected to a particular facility." *Id.* at 1269.  The Court reasoned that "Title II delineates the entities included therein as places, establishments, lodgings, and facilities … and provides fifteen specific examples of regulated facilities …. None of the listed entities remotely resembles a membership organization." *Id.*; *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 756 (9th Cir. 1994) (affirming dismissal of Title II public accommodation discrimination claim against a national non-profit organization where the plaintiff did not "allege facts from which it could be concluded that [the defendant] is closely connected to a 'place' or 'facility'").  As a trade association, the League is a membership organization, and Shih does not allege any facts connecting the League to a structural facility.  Accordingly, Shih has not alleged facts sufficient to show he was denied access to a place of public accommodation.

Shih also fails to satisfy the second element of a Title II claim because he does not plausibly allege facts that demonstrate discriminatory intent.  "To survive dismissal, a plaintiff must allege that he is in a protected class and must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant was motivated by discriminatory intent." *Renxiong Huang*, 2018 WL 3579103, at *4.  Here, Shih sufficiently pleads that he is a member of a protected class because he is Chinese American and Christian, but he fails to plead any facts that would allow the court to infer that The Broadway League was motivated by discriminatory intent when it ignored Shih's emails.

A plaintiff bringing a Title II claim "must allege facts which show that he was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent.  A plaintiff may prove discriminatory intent, motive, or

purpose by direct evidence or by circumstantial evidence, including evidence of the difference in treatment." *Coward*, 665 F. Supp.2d at 307 (citation omitted).   The Complaint does not fulfill those requirements.  Shih does not plausibly allege that he was denied a service that others were offered; nor does he allege facts demonstrating discriminatory intent through direct or circumstantial evidence.  For instance, Shih does not allege that as a trade organization, the League provides non-members the service of "assisting with" their shows, and he does not allege that he applied for and was denied an equal opportunity to obtain membership in the League.  *See Guichardo v. Langston Hughes Queens Library*, No. 15-CV-2866, 2015 WL 13227995, at *4-5 (E.D.N.Y. Nov. 20, 2015) (dismissing a claim under Title II where the plaintiff failed to allege facts supporting his claim that a library employee's refusal to help him was motivated by discriminatory intent); *cf. Daniel v. Paul*, 395 U.S. 298 (1969) (reversing dismissal of Title II public accommodation discrimination claim where white people were routinely provided "membership" in a privately owned recreational facility while black people were routinely denied it).

Crucially, there are no facts in the Complaint or even in Shih's brief tying Defendant's failure to engage with Shih to Shih's race or religion.  Shih alleges only that the League ignored his "attempt by a Chinese American artist to receive any help or assistance," and he states in conclusory fashion that "this constitutes a clear act of racial and religious discrimination."  (Compl. ¶ 14.)  Such vague and conclusory allegations are insufficient to plausibly allege discriminatory intent.  *See Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (summary order) (concluding in the context of a section 1981 discrimination claim (which uses the same standards as Title II) that "[a]

plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss"); *Lurch v. City of New York,* No. 19-CV-11253, 2021 WL 1226927, at *4 (S.D.N.Y. March 31, 2021) (dismissing plaintiff's Title II claim because "[a]lthough Plaintiff states the conclusion that he was treated unfairly as a result of being a black man, he does not support that conclusion with any factual content. Plaintiff alleges that during both incidents, no one else was removed from the hotel lobby and bathroom, that no one else was asked if they were guests of the hotel, and that no one else was interrupted while they were using the bathroom"); *Rogers v. New York City Board of Elections*, 988 F. Supp. 409, 412 (S.D.N.Y. 1997) ("plaintiff has not alleged that he was excluded [from defendant's program] because of his race, color, religion, or national origin, but rather because he missed the deadline for inclusion in the program. The Civil Rights Act is not intended to provide a universal remedy for all the unfairnesses of life; its exclusive concern is with discrimination based on the grounds it enumerates") (citations omitted).

Additionally, Shih's allegations that non-party TodayTix excluded him from its Member Nights program and website are not sufficient to show that the League (the only Defendant in this case) discriminated against Shih because the League is not affiliated in any way with TodayTix. TodayTix – not the League – excluded Shih from TodayTix's programs, as indicated by email correspondence between Shih and TodayTix, which Shih attached to his brief. (*See* Pl. Mem., Ex. C at ECF 39.[4])

Although Shih states for the first time in his opposition brief that "The Broadway League, through entrenched racism and discriminatory policies, failed to provide him with

---

[4] "Pl. Mem." refers to Plaintiff's Response to Defendants Motion to Dismiss at Dkt. 20.

an opportunity to become a member," Shih does not allege that he actually applied to become a member. [5] (*See* Pl. Mem. at 6.)  Indeed, Shih's opposition suggests otherwise. Shih attaches to his brief what appear to be messages between Shih and the League's Diversity and Inclusion Officer Gennean Scott.  (See Pl. Mem. at 6 (citing Ex. A at ECF 35-36).)   The communications do not support Shih's discrimination allegations; if anything, they contradict them.  The messages show that Shih did not request assistance from Scott or request membership in The Broadway League.  Rather, Shih invited Scott to attend his show.  (Pl. Mem., Ex. A at ECF 35-36.)  Scott responded that she would "love to check it out," in one message; her next message noted that she could not attend one of the proposed dates and would have to "talk to [her] boyfriend" about the other proposed date.  (*Id.* at ECF 36.)  There are no further messages from Scott.  (*Id.*)  Nothing in those communications connects Shih's status as a Chinese American and a Christian to Scott's failure to respond to his messages or attend his shows.

---

[5]  The Court takes judicial notice of the mission statement and membership information on the League's website, which is publicly available and which Shih references in both his Complaint and brief.  *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (citations omitted)*; Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp.3d 156, 166 (S.D.N.Y. 2015)("[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination'") (citing *Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F. Supp.2d 173, 179 n.8 (S.D.N.Y. 2006)).  The League's website states that that "theatre owners/operators, producers, presenters, and general managers of Broadway theatre in New York … are eligible to apply for Associate Membership," which they may do by clicking on the email link on the League's webpage.  *About the League, Membership*, THE BROADWAY LEAGUE, www.broadwayleague.com/about/membership (last visited Aug. 20, 2024). Shih does not allege that he ever inquired about membership or used the designated email address for membership inquiries.

While Shih may have been disappointed by the League's lack of engagement with him, he does not plausibly allege that the League is a public accommodation from which he was denied equal opportunity to receive services. He therefore lacks a cognizable claim under Title II.

### 2. State Claims: NYSHRL and NJLAD

Shih's state law discrimination claims fail for at least one of the reasons his Title II claim fails: Shih does not allege facts that connect the League's actions to any of his protected characteristics. While the elements of a NYSHRL and NJLAD public accommodation discrimination claim are generally consistent with those of Title II, the term "public accommodation" is interpreted more broadly in the state statutes than in Title II. Regardless, for purposes of Defendant's motion to dismiss, the Court need not decide whether the League is a "public accommodation" under New York and New Jersey law because even assuming that Shih could allege the League is a place of public accommodation within the meaning of the state statutes, he nevertheless fails to allege facts sufficient to give rise to an inference of discrimination. Accordingly, Shih's discrimination claims under state law should also be dismissed.

Like Title II, both the NYSHRL and NJLAD prohibit discrimination in places of public accommodation. *See* N.Y. Exec. Law § 296(7) ("It shall be an unlawful discriminatory practice for any person … agent or employee of any place of public accommodation … because of the race, creed, color, [or] national origin … of any person … to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof"); N.J. Stat. § 10:5-4 ("all persons shall have the opportunity … to obtain all the accommodations, advantages, facilities, and privileges

of any place of public accommodation ... without discrimination because of race, creed, color, [or] national origin ....").  And, like Title II, at the pleading stage, both the NYSHRL and NJLAD require a plaintiff to plausibly allege facts giving rise to an inference of discrimination based on the plaintiff's protected characteristics.  *See Jones v. Beth Israel Hosp*., No. 17-CV-3445, 2018 WL 1779344, at *12 (S.D.N.Y. Apr. 12, 2018) (a plaintiff bringing a NYSHRL public accommodation discrimination claim "is required to allege facts sufficient to give rise to an inference of discrimination"); *Greene v. Lance*, No. CV-2114399, 2022 WL 1241309, at *4 (D.N.J. Apr. 27, 2022) ("[t]o state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, (1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class") (citations omitted).

Both statues define place of public accommodation using lists of public businesses, none of which include "trade organizations."  *See* N.Y. Exec. Law § 292(9); N.J. Stat § 10:5-5(l).  However, courts interpret "place of public accommodation" within the meaning of these statutes more broadly than Title II.  *See Cahill v. Rosa*, 89 N.Y.2d 14, 21, 651 N.Y.S.2d 344, 346 (1996) ("[t]he prefatory sentence of [the NYSHRL] states that [t]he term place of public accommodation, resort or amusement shall include, except as hereinafter specified, all places included in the meaning of such terms as. This is broad and inclusive language, and the statutory list that follows it is illustrative, not specific") (internal quotation marks omitted); *Dunk v. Brower,* No. 07-CV-7087, 2009 WL 650352, at *7 (S.D.N.Y. March 12, 2009) (the NJLAD "is interpreted more broadly than its federal counterpart" as the NJLAD includes "an expansive, non-exhaustive list of over 50 places

of public accommodation").  Defendant argues that both the NYSHRL and NJLAD expressly exclude "distinctly private" organizations from the definition of place of public accommodation – and that the League is a private organization because it requires membership.  (Def. Mem. at 7.[6])

Perhaps so.  But, regardless, the Court need not address that issue because, as discussed above, Shih has not alleged facts to demonstrate discriminatory intent.  That is, even assuming that Shih could allege facts sufficient to show that the League is a place of public accommodation within the meaning of the NYSHRL or NJLAD, Shih fails to connect the League's actions (or rather, inaction) to Shih's protected characteristics, as discussed above.  *See Jones,* 2018 WL 1779344, at *13 (granting motion to dismiss plaintiff's NYSHRL public accommodation discrimination claim because "Plaintiff has not alleged facts that suggest even an inference of discrimination. He states in conclusory fashion that Defendant 'refused to treat' him because of his race but does not allege … that other patients of other races were treated any differently than he was"); *Langley v. United Airlines, Inc.*, No. CV-23-20602, 2024 WL 3219295, at *6 (D.N.J. June 28, 2024) (granting defendants' motion to dismiss NJLAD public accommodation discrimination claim because "Plaintiff does not allege any facts to support his assertion that [Defendants] or anyone else acting on [Defendants'] behalves took these actions against Plaintiff ***based on*** his race.") (emphasis in original).

Accordingly, Shih's state law discrimination claims should also be dismissed.

---

[6] "Def. Mem." refers to Defendant's Memorandum Of Law In Support Of The Motion to Dismiss The Complaint In Its Entirety at Dkt. 17.

**B.    Retaliation Claims (Count IV)**

Shih also alleges that in response to his inquiries seeking assistance from the League, "Defendant took retaliatory actions by encouraging Defendants [sic] Broadway partners to not help and assist Plaintiff's show."  (Compl. ¶ 25.)  Shih alleges that TodayTix's exclusion of Pimcomedy Fashion Show from their Member Nights program and their website is evidence of Defendant's "retaliatory conduct."  (*Id.* ¶ 26.)  He states that this alleged retaliatory conduct violates federal and state anti-discrimination statutes, including Title VII of the Civil Rights Act of 1964 ("Title VII"), the NYSHRL, the NYCHRL, and the NJLAD.  These claims must be dismissed, however, because Shih fails to allege facts that provide even minimal support for the elements of a retaliation claim.

**1.    Title VII and the NYSHRL**

Title VII forbids an employer from retaliating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The NYSHRL also makes it unlawful for an employer to retaliate against an employee because she "has opposed any practices forbidden under this article."  N.Y. Exec. Law § 296(7).  The same standards govern retaliation claims under Title VII and the NYSHRL, and both are subject to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp.3d 309, 330 (S.D.N.Y. 2020).

To demonstrate a prima facie case of retaliation, a plaintiff must establish "(1) that she participated in an activity protected by [the statutes], (2) that her participation was

known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). If the plaintiff satisfies their initial burden, a presumption of retaliation arises, which the employer may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action. *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 70 (2d Cir. 2015). If the employer meets that burden, the burden shifts back to the plaintiff to prove that the desire to retaliate was the but for cause of the adverse action. *Id.* At the motion to dismiss stage, however, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015). Here, Shih's Title VII and NYSHRL claims must be dismissed because he does not allege facts that give plausible support to any element of a prima facie case.

Chief among the conspicuously missing facts from Shih's complaint are any allegations suggesting "the existence of an employer-employee relationship" between Shih and the League. *See Gulino v. New York State Education Department*, 460 F.3d 361, 370 (2d Cir. 2006) ("[t]he existence of an employer-employee relationship is a primary element of Title VII claims"); *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997) ("we agree with the district court that O'Connor was not a Rockland employee within the meaning of Title VII and thus that her discrimination claim under that statute must fail"). The Complaint nowhere alleges that Shih was ever employed by the League, let alone that he participated in any protected activity; that the League was aware of any such activity; or that he was subjected to an adverse employment action as a result of any such

activity.  (*See* Compl. ¶¶ 25-28.)  For that reason alone, Shih's Title VII and NYSHRL retaliation claims should be dismissed.

### 2.  NYCHRL

The NYCHRL also prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has ... opposed any practice forbidden under this chapter."  N.Y.C. Admin. Code § 8–107(7).  The NYCHRL's retaliation standard is similar to – but in part more permissive than – its federal and state analogues.  *Farmer*, 473 F. Supp.3d at 309.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citations omitted).  Even under the more permissive standards of the NYCHRL, Shih fails to allege basic facts lending even minimal support to his retaliation claim.  He alleges neither that he was employed by Defendant, nor that he participated in any activity opposing Defendant's alleged discrimination,[7] nor that Defendant engaged in conduct that was likely to deter Shih from participating in any protected activity.  Accordingly, Shih's NYCHRL retaliation claim fails for the same reasons as his Title VII and NYSHRL retaliation claims fail.

### 3.  NJLAD

Finally, Shih's retaliation claim under the NJLAD suffers from the same defects as

---

[7] Shih asserts in his brief that "Plaintiff meticulously identifies instances where he engaged in protected activities under civil rights statutes."  (Pl. Mem. at 9.)  Yet, even construing Shih's materials liberally, the Court can find no mention of any alleged protected activities in any part of Shih's brief or Shih's Complaint.

described above, as well as one additional problem: the NJLAD only applies to conduct that takes place in New Jersey. *Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp.3d 495, 504 (S.D.N.Y. 2013) ("New Jersey courts have consistently applied the law of the state of employment to workplace claims, and have therefore only applied the NJLAD if the plaintiff worked in New Jersey") (collecting cases). Shih does not allege that he was employed by Defendant in New Jersey – or that any of the conduct alleged took place in New Jersey. His NJLAD claim thus should be dismissed as well.

**C.    Breach of Implied Contract (Count II)**

Shih asserts a claim for breach of implied contract apparently based on the League's Statement of Equity and Inclusion posted on its website. (*See* Compl. ¶¶ 17-19 and Pl. Mem., Ex. B at ECF 37.) Shih appears to allege that by posting a statement about the League's commitment to diversity and inclusion on its public website, the League created an implied-in-fact contract with Shih to assist with Shih's show. Shih alleges that Defendant breached its commitment to diversity, equity, and inclusion within the entertainment industry by failing to "provide the promised support." (Compl. ¶¶ 17-19.) Shih's breach of implied contract claim fails because he does not allege any facts from which a court could conclude there was a contract.

"To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc*., 487 F.3d 89, 95 (2d Cir. 2007). Under New York law, an implied agreement is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances,

their tacit understanding." *Federal Insurance Co. v. Distinguished Properties Umbrella Managers Inc.,* 721 F. Supp.2d 293, 302 (S.D.N.Y. 2010), *as amended* (July 12, 2010) (quoting *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996)); *Jinno International Co. v. Premier Fabrics, Inc.,* No. 12-CV-7820, 2013 WL 4780049, at *2 (S.D.N.Y. May 24, 2013) ("[t]o establish … the existence of a contract, even in the case of an implied rather than an express agreement, a plaintiff must allege sufficient facts to establish 'an offer, acceptance of the offer, consideration, mutual assent, and intent to be bound.'") (quoting *Register.com, Inc. v. Verio*, *Inc.,* 356 F.3d 393, 427 (2d Cir.2004)); *see also Maas v. Cornell University,* 94 N.Y.2d 87, 93-94, 699 N.Y.S.2d 716, 719-20 (N.Y.1999) ("[a]n implied-in-fact contract ... still requires such elements as consideration, mutual assent, legal capacity and legal subject matter").

Shih does not allege any facts which, taken as true, demonstrate the requisite meeting of the minds to form an implied contract. *See Federal Insurance Co.*, 721 F. Supp.2d at 302 (dismissing plaintiff's breach of implied contract claim because "the Complaint fails to assert any facts that illustrate the course of dealings or the nature of the consideration or suggest that a 'meeting of the minds was indicated by some intelligible conduct, act or sign'") (quoting *Baltimore & Ohio Railroad Co. v. United States,* 261 U.S. 592, 598 (1923)).  The Complaint does not include any allegations of fact demonstrating an offer, acceptance, consideration, mutual assent, or intent to be bound. Rather, Shih merely alleges that "Defendant publicly declared its commitment to diversity, equity, and inclusion within the entertainment industry, including supporting BIPOC artists like Plaintiff."  (Compl. ¶ 17.)

Shih argues that "based on [the] parties' conduct … his ongoing relationship with Off Broadway and Broadway shows, the Broadway League establishes an implied contract requiring fair and equitable treatment." (Pl. Mem. at 13 (citation omitted).) Shih attaches to his brief a printout of the League's Statement on Equity and Inclusion (Pl. Mem., Ex. B at ECF 37) and states that the League's "commitment to diversity and inclusion on its website further supports the implication that they would provide fair assistance to a minority theater producer Asian American [sic]." (Pl. Mem. at 13-14.) The League's statement of "commitment," however, does not make any promise to any individual or manifest any intent to be contractually bound. Instead, it states that the League "believes in promoting an equitable and inclusive theatre community and recognizes that our industry must change in order to reflect those values … To that end, the League is committed to promoting anti-racist policies and practices in our organization and our industry …." (Pl. Mem., Ex. B at ECF 37.) Defendant's public posting of a statement on their website about generally being committed to diversity and inclusion is insufficient to create a contract with Shih. *See Morales v. New York University,* 585 F. Supp.3d 610, 615 (S.D.N.Y. 2022) (Defendant's mission statement posted on its website fell "far short of a contract, expressed or implied, promising in person instruction" where Defendant's statement included only "vague statements about its desire to take advantage of its unique location").

Citing his communications with Gennean Scott – in which Shih invited Scott to attend his show – Shih also argues that "his proactive engagement with the Broadway League constituted an offer for assistance, implicitly accepted by the League's acknowledgment." (Pl. Mem. at 13 (citing Ex. A at ECF 35-36).) But there is nothing

resembling an offer or acceptance in the messages he cites. As discussed above, Shih's communications with Scott reveal only that Shih invited Scott to attend his show and that Scott said she would "love to check it out." (Pl. Mem., Ex. A at ECF 35.) These allegations fall exceedingly short of plausibly alleging that the parties mutually understood and intended to be bound by any specific contractual terms. *See Norris v. NBA Properties, Inc.*, No. 19-CV-06020, 2020 WL 1877808, at *4 (S.D.N.Y. Apr. 14, 2020) (dismissing plaintiff's claim of implied breach of contract where the plaintiff's allegations that the defendant agreed to listen to his pitch of a business idea were "not enough for the Court to conclude that [Defendant] manifested his assent to enter into a contract with Plaintiff or to divine any of the material terms necessary to the formation of an implied-in-fact contract"). Accordingly, Shih has not stated a claim for breach of implied contract that is plausible on its face, and his claim should be dismissed.

### D.    Infliction of Emotional Distress (Counts III and V)

Shih alleges that Defendant's "rejection of Plaintiff's show and their refusal to engage meaningfully in discussions" intentionally caused him emotional distress. (Compl. ¶¶ 21-24.) Shih also alleges that Defendant's negligence in fulfilling their duty of care to "treat[ ] all artists fairly and without causing undue emotional harm" caused him severe emotional distress, including "anxiety, frustration, and humiliation." (Compl. ¶¶ 29-35.) Both claims fail because Shih cannot establish the first element of any infliction of emotional distress claim: extreme and outrageous conduct.

Under New York law, a claim for intentional infliction of emotional distress requires a plaintiff to allege four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional

distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). To satisfy the first element, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (internal quotations marks omitted) (quoting *Howell v. New York Post Co*., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (1993)).

The conduct Shih alleges here – that Defendants rejected his show, failed to help him, and ignored his requests for assistance, causing him "anxiety, frustration, and humiliation" – falls far short of this "rigorous and difficult to satisfy" standard. *See Sesto v. Slaine,* 171 F. Supp.3d 194, 201-02 (S.D.N.Y. 2016) ("conduct that causes inconvenience and embarrassment or places a person in an uncomfortable situation for a protracted time is not sufficient to state a claim for intentional infliction of emotional distress") (citation omitted); *Kilduff v. Cosential, Inc*., 289 F. Supp.2d 12, 22 (D. Conn. 2003) (dismissing intentional infliction of emotional distress claims against CEO who failed to act in response to plaintiff's complaint detailing sexual harassment because, whether "[c]haracterized as either a failure 'to respond' or 'to prevent,' or 'choosing to ignore,' such conduct does not rise to the level of extreme and outrageous behavior"). Indeed, courts have dismissed emotional distress claims where parties alleged more egregious conduct than alleged by Shih. *See, e.g., Carney v. Boston Market,* No. 18-CV-713, 2018 WL 6698444, at *2 (S.D.N.Y. Dec. 20, 2018) (dismissing intentional infliction of emotional distress claim for failure to satisfy the "extreme and outrageous" element where the plaintiff alleged that the defendant, a restaurant, "purposefully gave Plaintiff, a

loyal customer, a chicken piece containing a baby bird's head -- including a protruding beak and eyes."); *Chanko v. American Broadcasting Companies Inc.*, 27 N.Y.3d 46, 58, 29 N.Y.S.3d 879 (2016) (dismissing intentional infliction of emotional distress claim because it was not sufficiently extreme or outrageous conduct to video tape and later air the death of patients without consent of the patient or family members).

Similarly, because a claim for negligent infliction of emotional distress also requires extreme or outrageous conduct, Shih's claim for negligent infliction of emotional distress also fails. *See Vail v. City of New York*, No. 18-CV-9169, 2020 WL 127639, at *4 (S.D.N.Y. Jan. 10, 2020) (dismissing negligent infliction of emotional distress claim where plaintiff failed to allege extreme and outrageous conduct and stating that "[l]ike its intentional counterpart, a claim for negligent infliction of emotional distress also requires that the defendant's conduct be extreme and outrageous"); *Green v. City of Mount Vernon,* 96 F. Supp.3d 263, 297-98 (S.D.N.Y. 2015) (stating that for either intentional or negligent infliction of emotional distress, "[t]he conduct forming the basis of the claim must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society") (internal quotation marks and citation omitted).  Accordingly, Shih's claims for both intentional and negligent infliction of emotional distress should be dismissed.

## E.    Defamation (Count VI)

Shih also brings a claim for defamation.  He asserts that "Defendant's false statements to third parties, implying that Plaintiff's show was not suitable for their membership, constitute defamation" and were made with the intent to harm Plaintiff's

professional reputation and character." (Compl. ¶ 36.) This claim should be dismissed because Shih fails to identify a single defamatory statement made by the League.

"'To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Group, Ltd.*, 726 F. Supp.2d 323, 329 (S.D.N.Y. 2010) (quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp.2d 188 (S.D.N.Y. 2009)). At the motion to dismiss stage, a plaintiff must "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Alvarado v. Mount Pleasant Cottage School District*, 404 F. Supp.3d 763, 790 (S.D.N.Y. 2019) (dismissing defamation claim because the plaintiff "either has not pleaded the 'particular words complained of,' or, where she does provide particular words, has not established that the statements were 'reasonably susceptible' to a defamation claim") (citing *Celle v. Filipino Reporter Enter Inc.*, 209 F.3d 163, 177 (2d Cir. 2000)).

Shih's Complaint fails to assert nearly all elements of a defamation claim. Most conspicuously, Shih does not identify any allegedly false statements the League made about him; nor does he identify to whom or when they were made. (*See* Compl. ¶¶ 36-41.) Shih alleges merely that Defendant made false statements to unnamed "third parties, implying that Plaintiff's show was not suitable for their membership." (*Id.*) Those allegations are far too conclusory and fail to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *see also Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,

No. 19-CV-10769, 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020) (dismissing defamation claim and reasoning that "although [the complaint] identifies the person who allegedly made the defamatory statements …, it does not allege what it is that he said about 'the business relationship and dispute …' that was false and defamatory or to whom he made the statements and when he made them").  His defamation claim therefore should be dismissed.

### F.    Tortious Interference with Prospective Economic Advantage (Count IX)

Finally, Shih brings a claim for tortious interference with prospective economic advantage.  He alleges that "Defendant intentionally interfered with Plaintiff's prospective economic advantage by making false statements about the suitability of Plaintiff's show, which resulted in harm to Plaintiff's professional reputation and potential opportunities." (Compl. ¶ 49.)  This claim, too, should be dismissed, both because the claim is duplicative of Shih's defamation claim, and because Shih fails to allege a specific business relationship with a third party.

A plaintiff alleging tortious interference with prospective economic advantage must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).  Shih does not allege facts plausibly establishing any of those required elements.

First, Shih fails to allege a business relationship with a third party.  He alleges only that Defendant "intentionally interfered with Plaintiff's prospective economic advantage

by making false statements about the suitability of Plaintiff's show."  (Compl. ¶ 48.)  This is insufficient to state a claim for tortious interference with economic advantage.  *See, e.g.*, Stardust Monte-Carlo, S.*A.R.L. v. Diamond Quasar Jewelry, Inc.*, 2018 WL 1027754, at *5 (S.D.N.Y. Feb. 20, 2018) (stating that "courts in this District are clear that where a party cannot identify specific third party relationships that were disrupted, a tortious interference claim cannot lie"); *Shah v. Lumiere*, 2013 WL 6283585, at *2 (S.D.N.Y. Dec. 3, 2013) ("Plaintiff has not alleged interference with a specific business relationship, which is necessary to plead sufficient allegations under the first two elements of a claim for tortious interference with prospective business relationships").

Construing Shih's complaint and brief liberally, the Court may infer that the third-party relationship Shih intended to identify is Shih's relationship with TodayTix.  (*See* Compl. ¶¶ 9-10; Pl. Mem., Ex. C at ECF 39.)  But even assuming Shih properly identified his relationship with TodayTix as being the relationship in which the League interfered, his claim nevertheless fails because he does not allege any facts, which, taken as true, would satisfy the other elements of his tortious interference claim.  In particular, he does not plausibly allege any facts indicating that the League knew about his relationship with TodayTix, that the League acted out of malice when it interfered with that relationship, or that the League's actions caused harm to Shih's relationship with TodayTix.  *See Evliyaoglu,* 2020 WL 7774377, at *2 (dismissing counterclaims where Defendant alleged that false statements were made "to other Turkish manufacturers" and that Defendant "lost potential business opportunities" but did not allege "what the particular business opportunities were and whether they were with [Plaintiffs] or some other manufacturer ... what was said to the Turkish manufacturers that caused [Defendant] to lose business

opportunities"); *4 K & D Corp. v. Concierge Auctions*, LLC, 2 F. Supp.3d 525, 546 (S.D.N.Y. 2014 (dismissing tortious interference claim where "plaintiffs have not alleged any fact showing that the defendants knew of the sellers' relationships with [the third party business] – much less that the defendants intentionally interfered with such relationships"). Accordingly, Shih's tortious interference claim should also be dismissed.

## Leave To Amend

The Court recommends that all claims be dismissed with prejudice, with the exception of Shih's discrimination claims under the NYSHRL and the NJLAD, Shih's defamation claim, and Shih's tortious interference claim, which should be dismissed without prejudice and with leave to amend.

The parties do not address leave to amend in their briefs. However, the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 107 (2d Cir. 2022). The rules of procedure direct that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, leave to amend to address the deficiencies raised by the Court ordinarily should be granted at least once, particularly for pro se parties. *See Garcia v. Superintendent of Great Meadow Correctional Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (stating that, generally, a court "should not dismiss a pro se complaint without granting leave to amend at least once") (citation omitted). In its discretion, however, the court may "deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *MSP Recovery Claims, Series LLC v. Hereford Insurance Co*., 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Estate Of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

Here, amendment of several of Shih's claims would be futile because the problem with those claims is substantive and cannot be cured by better pleading.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile"). Specifically, Shih's Title II discrimination claim cannot be cured with repleading because the League is not a public accommodation within the meaning of Title II; his retaliation claims cannot be cured because Shih was never employed by the League; and his breach of contract claim cannot be cured because the diversity statement on Defendant's website is not a contract.  *See Jahad v. Holder,* No. 19-CV-4066, 2023 WL 8355919, at * 10 (S.D.N.Y. Dec. 1, 2023) ("leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim").  Given their futility, Counts I (Title II discrimination), IV and VIII (retaliation), and II (breach of contract) should be dismissed with prejudice.

The Court cannot say, however, that amendment of Shih's other claims would be futile, in the event there are additional facts that can be pled in good faith.  Because a liberal reading of the complaint gives an "indication that a valid claim might be stated" with respect to Shih's state law discrimination claims (Count VII), defamation claim (Count VI), intentional and negligent infliction of emotional distress claims (Counts III and V) and tortious interference claim (Count IX), those claims should be dismissed without prejudice and with leave to amend.  *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").

## Conclusion

For the foregoing reasons, I recommend that Defendant's motion to dismiss the Complaint in its entirety be GRANTED. Counts I, II, IV, and VIII should be dismissed with prejudice; Counts III, V, VI, VII, and IX should be dismissed without prejudice and with leave to amend. To the extent not discussed herein, the Court has considered all of Plaintiff's arguments and determined them to be either moot or without merit.

### Deadline For Filing Objections And Preserving Appeal

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Any party shall have fourteen (14) days to file a written response to the other party's objections. Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable John P. Cronan, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time for filing objections must be addressed to Judge Cronan. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: August 20, 2024
     New York, New York

Copies transmitted to all counsel of record.